UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| SHELLEE J. HALL, | ) |
| Plaintiff | ) |
| vs. | ) CAUSE NO. 3:04-CV-259 RM |
| FOREST RIVER, INC., | ) |
| Defendant | ) |

OPINION AND ORDER

This cause is before the court on defendant Forest River's motion for sanctions, seeking an award of fees and expenses incurred in preparing for the aborted first trial of this case. For the reasons that follow, the court grants Forest River's motion.

Shellee Hall sued Forest River for employment discrimination. She contended that she was denied a promotion to an auditor position because of her sex and in retaliation for her announcement that she would support another employee's sexual harassment claim, and that the failure to promote amounted to constructive discharge. Pretrial rulings resolved the constructive discharge in Forest River's favor, and the case headed for a March 2007 trial date on the remaining issues.

A brief summary of the facts is necessary to present the people involved in the case. Ms. Hall worked as a quality control inspector for Forest River and aspired to be an auditor; auditors supervise the quality control inspectors. All the

(six or seven) auditors at Forest River were male. In early 2002, before the incidents giving rise to this suit, Ms. Hall experienced difficulties with John Quake, a Forest River salesman, who called her at home, rubbed up against her, and made boorish comments. In the second half of 2002, Ms. Hall learned that a production line worker named Monica Hall was experiencing similar problems with Mr. Quake. Ms. Hall says she told human resources director Jeffrey Rowe and quality director John Blair that if Ms. Horn filed charges, she would support Ms. Horn with the story of her own experience with Mr. Quake. After that, Ms. Hall says, Mr. Blair promoted Leo Akins to the auditor position she felt should have been hers. One of the reasons Forest River cites for that decision is that Ms. Hall was too friendly with line workers whose work she checked, to the point of dating one of them.

Forest River saw the operative facts differently, but the preceding paragraph summarizes Ms. Hall's contentions and the people involved.

Shortly before the final pretrial conference, Forest River filed a motion in limine seeking exclusion of roughly two dozen classes of evidence that Forest River thought Ms. Hall might try to present at trial.[1] The court ruled orally on the

---

[1] John Quake allegedly harassed Monica Horn and, months earlier, Ms. Hall. Forest River sought exclusion of Mr. Quake's acts of alleged harassment, Mr. Quake's alleged sexual harassment of Ms. Horn, Mr. Quake's personal activities and relationships, Mr. Quake's employment history before Forest River, as well as other employees subjected to alleged or discrimination, harassment, or retaliation. Forest River sought to exclude personal information of its president, testimony of three undisclosed witnesses, information about the number of female managers or supervisors other than auditors while Ms. Hall worked as a quality control inspector, information about why former Forest River employees left their employment, and any witness's criminal history. Forest River sought exclusion of evidence about its position statement to the EEOC, the EEOC's interviews of its employees, non-decisionmakers' stray remarks about its

2

motions in limine at the final pretrial conference, explaining that the assigned judge views orders in limine as preliminary injunctions, so a party seeking an order in limine must make an adequate showing that irreparable harm is likely if the court denies its motion. Denial of the motion, of course, does not equate to admission of the targeted evidence; it leaves the party with the remedy of an in-trial objection. Recognizing that this approach leads the assigned judge to deny motions in limine that other judges would grant, the court continued:

> I have taken to giving very strong curative instructions. And if somebody walks into the face of one of these motions in limine, if not an order in limine, knowing that the admissibility will be contested and decides to present it in opening statement anyway, they run the risk of a very strong curative instruction, and I [heartily] invite anybody to appeal my admonition after they give such a statement in opening statement.
> 	Having said all that, I can't find, with the exception of those two points, the risk of irreparable harm in having to object at trial.
> 	And, further, while it appears to me that most of what has been raised here is probably inadmissible, will probably prove to be inadmissible when we get to trial, I find it very difficult to evaluate the incremental probative value of evidence in a vacuum and the risk of unfair prejudice or jury confusion in a vacuum.
> 	Accordingly, for example, Mr. Quake's conduct, it's very hard for me to imagine any likelihood of that getting into evidence. Ms. Hall must prove that she had a reasonable belief. As I understand it, I can give a jury instruction saying that the parties do not disagree with that and that the jury may consider that as established. And I don't believe there is a need to prove anything beyond that. I disagree with the plaintiff's argument on that.

---

employment decisions, and Ms. Hall's statements alleged to have been made to another female employee. Forest River sought to exclude lay opinion testimony about Ms. Hall's diagnosis, prognosis, physical condition, or mental condition, expert testimony from certain physicians, and "[a]ny inference or suggestion that Plaintiff can recover damages for her alleged physical injuries." Finally, Forest River sought to forbid mention of the court's summary judgment rulings, Ms. Hall's request for attorney's fees, the size of Forest River's law firm, and Forest River's ownership or financial information.

3

>I think there would have been a risk of the argument that this was too trivial. I'm sure that that will not be raised. I take counsel at their word when they tell me it won't be raised, so I don't see an irreparable harm of having to wait for trial. So while it appears to me to be about 95 percent sure that won't get into evidence, I also can't say that it is clearly inadmissible, and I think the cases have indicated that I should not grant motions in limine unless I can say that it is clearly inadmissible.
>
>Similarly, with other employees subject to discrimination, the number of female managers or supervisors, Forest River's position statement -— well, some of —- Forest River's position statement to the EEOC and statements of at least some of the employees, I think, probably will be [in]admissible. But going through these, I simply can't find the risk of irreparable harm that would justify an order in limine.

The court thus orally denied most of the motions in limine.

After the pretrial conference, to assure that the parties understood that the court had not ruled evidence admissible (and indeed, had predicted inadmissibility), the court added the following in a written memorandum:

>The court denied the balance of the relief sought by the motions because the court saw insufficient reason to believe an injunctive ruling was superior to in-trial objections that would allow the court to evaluate incremental probative value and risks of unfair prejudice and jury confusion in context of the trial. The court did a poor job, however, of informing the parties of its tentative thoughts on the admissibility of the items addressed by the motions. Accordingly, the court undertakes that task in this memorandum.
>
> *   *   *
>
>Forest River sought to preclude evidence of John Quake's alleged acts of harassment of Ms. Hall and Ms. Horn, Ms. Horn's statements about Mr. Quake's harassment (except her statements to Ms. Hall), and Mr. Quake's personal activities and relationships (apparently referring to his workplace romances). The pretrial conference disclosed that Ms. Hall and Forest River agree that Ms. Hall reasonably believed that Mr. Quake's alleged conduct that she and Mr. Rowe discussed during this meeting violated Title VII, and the court will so inform the jury. In light of the lack of contest over that element of Ms. Hall's retaliation case, the court does not expect

4

> this evidence to have sufficient incremental probative value to survive balancing against the risks of jury confusion and waste of time.
>
> Forest River sought to preclude evidence of other employees having been subject to discrimination, harassment, or retaliation. Forest River also sought to exclude evidence of the number of female managers or supervisors, other than auditors, during Ms. Hall's time as an inspector. At this point, the court cannot imagine either category of evidence having any tendency to make a fact of consequence to the determination of Ms. Hall's claims more probable or less probable.

Trial began on March 19. Shortly into the plaintiff's opening statement, Ms. Hall's attorney, Patrick O'Leary, referred to having asked a plant manager during a deposition whether he knew of any woman who ever had been a supervisor at any level of the company, which employs thousands of people. The first bench conference ensued, with Forest River's counsel explaining anew the basis on which Forest River had sought to exclude this evidence in its motion in limine. Mr. O'Leary first argued that it had not been excluded by any order in limine. When pressed for his rationale for admissibility, he made essentially the same argument he had presented in response to the motion in limine. The court sustained Forest River's objection and admonished the jury that the issue had nothing to do with what the jury had to decide in this trial.

The plaintiff's opening statement continued, illustrated by a flip chart depicting the timeline according to Ms. Hall. Mr. O'Leary told the jury that in 2002, salesman John Quake had approached Ms. Hall; the visual aid reported that Mr. Quake had tried to flirt with Ms. Hall, and that Mr. Quake had become "vicious." The second bench conference ensued. Forest River objected on the same

5

grounds that supported its motion in limine. Mr. O'Leary responded with the same grounds he had presented in opposition to the motion in limine. The court sustained the objection, told the jury that the information was irrelevant to what the jury was to decide, and on Forest River's request, admonished the jury to disregard what Mr. O'Leary had said and displayed.

Four sentences later, Mr. O'Leary began to tell the jury what Ms. Hall had told her plant foreman about Mr. Quake's conduct toward her. The plant foreman was well out of the decision-making loop on Ms. Hall's promotion. A third bench conference ensued. Forest River objected on the same grounds that supported its motion in limine. Mr. O'Leary responded with the same grounds he had presented in opposition to the motion in limine. The court sustained the objection and directed Mr. O'Leary to move to the next page of his flip chart.

A fourth bench conference occurred. The court overruled Forest River's objection to what Ms. Hall said Monica Horn told her.

A fifth bench conference ensued when Mr. O'Leary began to discuss what Mr. Rowe said to Ms. Hall when Ms. Hall told him about Mr. Quake. Forest River objected on the same grounds that supported its motion in limine. Mr. O'Leary responded with the same grounds he had presented in opposition to the motion in limine. The court sustained the objection and further reversed its earlier ruling at the final pretrial conference and granted Forest River's motion in limine concerning the conduct of Mr. Quake. The court again admonished the jury that what Mr. O'Leary had said and displayed had nothing to do with this case.

Mr. O'Leary told the rest of Ms. Hall's story without objection, then began to discuss potential witnesses, noting that Forest River had listed Ms. Hall's three children as potential witnesses. When he said they had been subpoenaed to those depositions and began to discuss the questions they were asked, a sixth bench conference ensued. The court sustained Forest River's objection to the children having been subpoenaed.

Mr. O'Leary then told the jury that in the depositions, Forest River asked the children why their parents had gotten divorced. Forest River objected. At the seventh bench conference, the court inquired whether Mr. O'Leary intended to introduce the depositions (which had been listed as exhibits by Forest River, but not Ms. Hall), and he said he did. The court sustained the objection.

Mr. O'Leary then closed his opening statement with the following:

> We do not intend during this case to ask any witness, no matter how hostile to our side, a question intended to humiliate that witness. We make that promise to you. Our evidence in this case will be focused on really the only issue. When did Forest River promote Mr. Akins, and did they promote him because of what Ms. Hall had done in terms of stepping up and saying she wouldn't lie and she would support Monica Horn. Those are the only issues in this case. And we make a promise to you that we will focus our entire attention on that issue and that issue alone in this case.

Ms. Hall called Forest River's human resources director Jeffrey Rowe as her first witness. Defense objections continued. Many were to the form of questions, and were overruled nearly entirely, but several went to sensitive areas and continued the torrent of bench conferences. The conferences culminated during the cross-examination of Mr. Rowe, when Forest River offered an exhibit that had

been redacted by the parties' agreement; Mr. O'Leary used his requested voir dire of the witness to suggest that Forest River was trying improperly to keep redacted information from the jury.

After trial concluded for the day and everyone had left, the court issued a written order granting Forest River's motion in limine to the extent the court previously had indicated that objections would be sustained. The court conceded its mistake in believing traditional objection and ruling would suffice to protect Forest River from irreparable harm in this case.

The following morning, Forest River moved for a mistrial. In response, Mr. O'Leary said part of his purpose had been to cast both Forest River and its counsel in a negative light. The court granted the mistrial motion. This motion followed a few days later.

Forest River seeks sanctions under 28 U.S.C. § 1927, which is meant to deter abusive practice by counsel and to assure that the costs of abusive practice are borne by those who cause them. Kapco Mfg. Co. v. C & O Enterprises, Inc., 886 F.2d 1485, 1491 (7th Cir. 1989); In re TCI Ltd., 769 F.2d 441, 446 (7th Cir. 1985). The inquiry under § 1927 is whether Mr. O'Leary "so multiplie[d] the proceedings . . . unreasonably and vexatiously," acting with either objective or subjective bad faith. Pacific Dunlop Holdings, Inc. v. Barosh, 22 F.3d 113, 120 (7th Cir. 1994).

Mr. O'Leary says he did nothing wrong. Pointing to the court's denial of Forest River's motion in limine, he notes that his opening statement did not touch

8

upon any matter that he was forbidden to broach. He complains that the court effectively allowed Forest River to renew its motion in limine in the midst of his opening statement. These problems could have been avoided, Mr. O'Leary argues, had the court communicated its ruling and intent more clearly. He explains his understanding of the explanations accompanying the in limine ruling as follows:

> In open court on March 5th, the District Court reiterated that if counsel promised certain proof but failed to deliver on that later, a harsh curative instruction would likely be given. The decision to mention the evidence was therefore a calculated risk. But that is true of any promise a lawyer makes in opening statement. As advocates, trial lawyers commonly *over promise* in opening statement only to feel the sting of their opponent's reminder in closing argument that a promise was made but not kept.
> The District Court's March 5th memorandum did nothing to change that impression in the mind of Ms. Hall's counsel. He regarded the District Court's comments contained in that memorandum as merely an attempt to quantify, for counsel's benefit, the degree of risk involved. If the District Court had intended to bar mentioning those topics, it would have granted the motion in limine like it granted [one in another of Mr. O'Leary's cases] one month earlier.

Mr. O'Leary explains that his reference to the children's depositions was meant to steal his opponent's thunder. He expected Forest River to argue that Ms. Hall had too many relationships—which Mr. O'Leary, based on a seemingly stereotypical understanding of how women use the English language, understood as a euphemism for romantic entanglements—with the production workers. The reference to the redactions in the exhibits, Mr. O'Leary explains, was a simple mistake attributable to his exhaustion. Mr. O'Leary also contends Forest River's mistrial motion, not made until the outset of the trial's second day, came too late.

9

Forest River's mistrial motion was in no sense untimely. It was based on the opening statement and the examination of Jeffrey Rowe, whose testimony was incomplete when the motion was made. Forest River didn't wait to see how the case would come out, or even how Mr. Rowe would come across as a witness, when it made its motion. *Compare* American Int'l Specialty Lines Ins. Co. v. Electronic Data Systems Corp., 347 F.3d 665, 667 (7th Cir. 2003); Schurz Communications, Inc. v. Federal Communications Com'n, 982 F.2d 1057, 1060 (7th Cir. 1992). Forest River made its motion promptly after an overnight recess in which it could assess whether to gamble the cost of its trial preparation.

The propriety of Mr. O'Leary's opening statement requires examination of the permissible use of opening statement. The court's understanding appears to differ from Mr. O'Leary's understanding. The court does not understand the opening statement to be an occasion to smear opposing counsel or to relate to the jury any information that has not been banned, without regard to the likelihood of the jury hearing about it at trial, with the only potential cost being that opposing counsel might remind the jury of the information when final argument arrives. Nor does the court understand the test for inclusion of an item in an opening statement to be simply whether a judge has ordered counsel to exclude it.

> An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is,

10

> if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict.
>
> A trial judge is under a duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop such professional misconduct. Here the misconduct of the attorney, Wagner, was not only unprofessional Per se but contemptuous in that he defied the court's explicit order.

United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring); *see also* United States v. McCabe, 131 F.3d 149, *4 (9th Cir. 1997) (unpublished) ("Opening statement is intended as an outline of a party's anticipated proof. . . . Opening statement should not refer to matters that are not to be presented as evidence.").

A court need not issue an order in limine, enforceable by contempt, to inform counsel's estimation of the admissibility of a class of evidence. Notwithstanding the denial of much of the motion in limine, the court made clear that the arguments supporting admissibility would not suffice to get the evidence before the jury. The court's ruling recognized the possibility that new (and more persuasive arguments) might be presented at trial, but Mr. O'Leary made no such new arguments when trial arrived. Each time Forest River objected during the opening statement or during the examination of Mr. Rowe, Mr. O'Leary's argument for admissibility was the one made and rejected at the final pretrial conference. Without new arguments for admissibility, the court's ruling on the

11

motion in limine could not reasonably have left Mr. O'Leary with any reasonable belief that the evidence would be admissible.

Professor Lubet explains the applicable rule this way in MODERN TRIAL ADVOCACY: ANALYSIS AND PRACTICE, at 419 (2d ed. 1997):

> At this point in the discussion two caveats are absolutely necessary. First, it is unethical to use an opening statement to discuss evidence where there is no reasonable basis for admissibility. There is a line to be drawn between evidence that may be subject to objection and that which is obviously inadmissible. While one need not defer in advance to the possibility of an arguable objection, counsel cannot ethically sneak information before a jury where there is no chance of having it properly admitted. It is acceptable to run the risk of inadmissibility, but it is entirely cynical, unacceptable, and wrong to expound clearly inadmissible evidence during an opening statement.

Forest River's motion in limine didn't address the depositions of Ms. Hall's children, but no hint of confusion colors Mr. O'Leary's reference to those depositions. One of the three children's depositions was listed as an exhibit in the case, and that listing did not include the questions Mr. O'Leary read to the jury. Ms. Hall hadn't counter-designated those questions or either of the other depositions. Yet Mr. O'Leary summarized those questions in his opening statement: "The children testified in depositions at defense counsel's office and defense counsel asked the kids a lot of questions about their mother. Including, do you know why your parents got divorced? Has anybody, has your mom, your dad ever explained to you at all why they got divorced?" When Forest River objected, Mr. O'Leary told the court he intended to introduce those depositions

12

into evidence. He could not have done so because he had not designated them pursuant to Federal Rule of Civil Procedure 26(a)(3).

Mr. O'Leary was commendably candid when asked about his reference to those depositions during argument on the mistrial motion the next day:

> MR. O'LEARY: But I think I have a duty – since I go first in opening statement, I have a duty to shape the jury's view, to create the prism through which the jury is going to see the case.
>
> THE COURT: The case or opposing counsel?
>
> MR. O'LEARY: Well sometimes they're the same. . . . Now, obviously, I'm expecting, when the jury hears how they asked her kids those questions, their take on it is going to be very negative.
>
> THE COURT: Particularly when you follow it with *you* won't ask humiliating questions—
>
> MR. O'LEARY: Correct.
>
> THE COURT: --which is what you said in opening, isn't it?
>
> MR. O'LEARY: Yes, sir. Yes, sir and that was my intent, because my intent is, if I think that's coming in, I will volunteer it first, but I will put it in a different perspective so that when the opposing counsel gets up and say – you know, they talked about her relationships at Forest River in their opening statement, how she was too touchy-feely; she got involved with too many people.

The court cannot square this espoused intent with the permissible purposes of opening statement as outlined earlier.

By any yardstick the court can construct consistent with the rules cited earlier, Mr. O'Leary's opening statement was grossly improper. In light of the court's oral and written rulings on Forest River's motion in limine, the court cannot but conclude that the opening statement was made in objective bad faith

13

and so was made vexatiously within the meaning of 28 U.S.C. § 1927. Mr. O'Leary's vexatious conduct multiplied the proceedings by making it necessary for Forest River to prepare a second time for trial—preparation that would have been unnecessary but for the mistrial required in the first trial.

An award of fees and expenses for a mistrial occasioned by opening statement is extraordinary, but the opening statement in this case was extraordinarily improper—far more so than the undersigned judge has seen in more than three decades as a trial judge. The court GRANTS Forest River's motion for sanctions (docket #119). Forest River shall file its statement of fees and expenses incurred between March 20, 2007 (the date of the mistrial) and June 11, 2007 (the day the retrial began) within 15 days of the date of this order.

SO ORDERED.

ENTERED:  July 5, 2007

/s/ Robert L. Miller, Jr.
Robert L. Miller, Jr., Chief Judge
United States District Court